UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLE DORAZIO, a.k.a. NICOLE DORAZIO, a.k.a. NICOLE MATTIOLI, a.k.a. NICOLE MATTIOLI-DORAZIO, <br><br> Plaintiff, <br><br> v. <br><br> C.O. MCGRAW, C.O. CAROLINA, C.O. SAMUEL, C.O. PAVOLICK, and SERGEANT SCHILLER, <br><br> Defendants. | JURY TRIAL DEMANDED <br><br> NO.: _____ <br><br> (JUDGE _____) |

## COMPLAINT

Plaintiff Nichole Dorazio a.k.a. Nicole Dorazio, a.k.a. Nicole Mattioli a.k.a. Nicole Mattioli-Dorazio, by and through her attorneys, Barry H. Dyller, Caelie M. Sweigart and Dyller & Solomon, LLC, brings this action related to the deprivation of Ms. Dorazio's protected rights and in support thereof, alleges as follows:

### JURISDICTION AND VENUE

1. This action arises out of violations of the United States Constitution brought pursuant to 42 U.S.C. § 1983, and the common law.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

1

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## THE PARTIES

4. Plaintiff Nichole Dorazio a.k.a. Nicole Dorazio a.k.a. Nicole Mattioli a.k.a. Nicole Mattioli-Dorazio ("Ms. Dorazio") is an adult individual domiciled in Monroe County, Pennsylvania.

5. Defendant C.O. McGraw ("Defendant McGraw") was at all relevant times employed by Monroe County as a corrections officer at the Monroe County Correctional Facility ("MCCF"). Defendant McGraw was on duty at MCCF on September 12, 2022.

6. Defendant C.O. Carolina ("Defendant Carolina") was at all relevant times employed by Monroe County as a corrections officer at MCCF. Defendant Carolina was on duty at MCCF on September 12, 2022.

7. Defendant C.O. Samuel ("Defendant Samuel") was at all relevant times employed by Monroe County as a corrections officer at MCCF. Defendant Samuel was on duty at MCCF on September 12, 2022.

8. Defendant C.O. Pavolick ("Defendant Pavolick") was at all relevant times employed by Monroe County as a corrections officer at MCCF. Defendant Pavolick was on duty at MCCF on September 12, 2022.

9. Defendant Sergeant Schiller ("Defendant Schiller") was at all relevant times employed by Monroe County as a sergeant at MCCF. Defendant Schiller was on duty at MCCF on September 12, 2022.

## FACTUAL BACKGROUND

**Incarceration at MCCF**

10. Following a guilty plea to one count of possession of drug paraphernalia, a misdemeanor, Ms. Dorazio was sentenced on Tuesday, August 23, 2022, to six (6) months probation.

11. As part of the sentencing order, Ms. Dorazio was advised to immediately appear at the Monroe County Probation Department for intake.

12. The same day as her sentencing, Ms. Dorazio called ahead to tell the Monroe County Probation Department that she was on her way.

13. During that call, the Probation Department advised Ms. Dorazio that they had not received her paperwork yet and that she should call back at the end of the week.

14. Upon information and belief, after she did not appear to the Monroe County Probation Department on August 23, 2022, a bench warrant was issued.

15. On September 12, 2022, Ms. Dorazio attended her scheduled first meeting with her probation officer and was arrested on the bench warrant at that time.

16. Following her bench warrant hearing, by Order dated September 12, 2022, Ms. Dorazio was remanded to MCCF pending a probation violation hearing scheduled for October 4, 2022.

## SEPTEMBER 12, 2022 BEATING AT MCCF

*Defendant McGraw Attempts to Punish Ms. Dorazio for Protected Speech*

17. As Ms. Dorazio was being processed in holding cell 5 in the Intake Area of MCCF on September 12, 2022, another detainee was instigating a fight in another cell.

18. Ms. Dorazio told the other detainee to calm down and that she knew what the corrections officers would do to him if he didn't stop.

19. In response to Ms. Dorazio's comment, Defendant McGraw stated, "I have hands and I'm not afraid to use them."

20. Defendant McGraw then yelled at Ms. Dorazio that she better shut up or Defendant McGraw would have her stripped and placed in a restraint chair all night as a suicide risk.

21. At no time was Ms. Dorazio at risk for suicide.

22. Defendant McGraw called for assistance to other corrections officers at MCCF based on the lie that Ms. Dorazio was being combative and was a suicide risk.

23. Upon Defendant McGraw's call for assistance, multiple other officers, including Defendants Carolina, Samuel, and Pavolick, reported to the Intake Area.

4

24. Upon information and belief, Defendant Schiller was already present in the Intake Area.

25. Around the same time, a representative from MCCF's psychology department reported to the Intake Area at the request of Ms. Dorazio to discuss her classification as a suicide risk.

26. Ms. Dorazio was not suicidal and had not indicated to any staff at MCCF that she was depressed or planned to harm herself in any way.

27. Upon information and belief, the representative from the MCCF psychology department did not identify Ms. Dorazio as a suicide risk.

***Defendants' Use of Unreasonable Force to Punish Ms. Dorazio***

28. After the additional officers arrived, Ms. Dorazio was moved from holding cell 5 to holding cell 2.

29. Prior to reaching cell 2, Defendant Samuel kicked Ms. Dorazio's feet out from under her, slammed her to the floor, and punched her twice directly in the face.

30. Defendants McGraw, Carolina, Samuel, Pavolick, and Schiller also shoved, punched, and kicked Ms. Dorazio.

***Defendants' Continued Beating and Stripping of Ms. Dorazio***

31. Without any reasonable cause, Defendant McGraw directed the other officers, including Defendants Carolina, Samuel, Pavolick, and Schiller, to strip Ms. Dorazio and put her in a restraint chair.

32. Ms. Dorazio was never previously given an opportunity to remove her own clothing and change into the MCCF inmate uniform.

33. Defendants Carolina, Samuel, Pavolick, Schiller, and McGraw, collectively began beating Ms. Dorazio and tearing off her clothes as she lay face down on a concrete bench in the cell.

34. While she was being forcefully stripped and her clothes ripped off, Ms. Dorazio begged to be permitted to remove her own clothing.

35. Ms. Dorazio was again denied the ability to change her own clothes and the violent stripping continued.

36. In the process of beating Ms. Dorazio and stripping her naked, Defendants Carolina, Samuel, Pavolick, Schiller, and McGraw ripped multiple hair extensions out of Ms. Dorazio's head.

37. During this beating, Defendant Carolina also choked Ms. Dorazio to the point that she could not breathe.

38. Defendant Schiller then struck Ms. Dorazio four times with pepper balls in multiple areas of her naked body and strapped her to a restraint chair.

39. Ms. Dorazio was strapped naked to the restraint chair by her arms and legs.

40. Ms. Dorazio was completely naked and her legs were restrained apart from each other, such that her vagina was exposed.

41. Defendants Carolina, Samuel, and Pavolick then wheeled Ms. Dorazio naked with her legs spread open in the restraint chair past multiple other individuals, both men and women, in the Intake Area.

42. No shields or blankets were used to cover Ms. Dorazio's naked body.

43. Upon information and belief, Ms. Dorazio's naked body was also captured on security video as she was wheeled naked and uncovered through the Intake Area.

44. Upon information and belief, Defendants Carolina, Samuel, Pavolick, Schiller, and McGraw shared the video footage of Ms. Dorazio's naked body with multiple staff members at MCCF for no legitimate purpose.

45. Ms. Dorazio was finally wheeled to a shower area where Defendants Carolina, Samuel, and Pavolick positioned the restraint chair under ice cold water to "decontaminate" her as they stood by watching and mocking her.

46. After the ice-cold "decontamination" shower, Ms. Dorazio was wheeled out of the water and left naked and cold in the restraint chair with her body burning from the pepper balls.

47. Ms. Dorazio was eventually wheeled back through the Intake Area to cell 2. A twin sized mattress was used this time to shield her naked body from the multiple individuals still in the Intake Area.

48. Based on Defendant McGraw's false narrative that Ms. Dorazio was a suicide risk, Ms. Dorazio was classified as a "level one," which resulted in Ms.

7

Dorazio being given no clothing or bedding other than a "turtle suit," or suicide suit, to wear for multiple days.

49. Ms. Dorazio was left naked in cell 2 in the Intake Area where multiple individuals, both men and women, were still present.

50. She was so badly beaten that at first Ms. Dorazio could not even put on the turtle suit and, instead, lay on the bed naked with the turtle suit covering her as a blanket.

51. Eventually, Ms. Dorazio was able to drape the turtle suit, unsecured over herself.

52. For multiple days, Ms. Dorazio remained in cell 2 in the busy Intake Area, only partially covered by the turtle suit.

53. No Defendant intervened to prevent or limit any of the other Defendants from using unreasonable force against Ms. Dorazio, despite having the opportunity to do so.

## Misconduct Report – September 12, 2022

54. The same day as the beating, September 12, 2022, Defendant Carolina filed a report charging Ms. Dorazio with multiple counts of misconduct for the incident in the Intake Area (the "Misconduct Report").

55. The Misconduct Report charged Ms. Dorazio with assault/attempted assault against MCCF staff; disobeying a verbal or written order; disorderly conduct; creating a minor disturbance; and, making an obscene or unwanted gesture.

56. Defendant Carolina's version of the incident continued to perpetuate the false narrative that Ms. Dorazio refused to remove her own clothing and physically assaulted corrections officers.

57. Eventually, Ms. Dorazio was afforded the opportunity to tell her side of the story to the MCCF conduct board.

58. Following the misconduct hearing and a review of the evidence, Ms. Dorazio was found only to have caused "a minor disturbance." Upon information and belief, this finding was simply an attempt to justify the corrections officers' conduct.

59. Ms. Dorazio was acquitted of all other charges, including assault/attempted assault of MCCF staff.

**No Medical Care at MCCF – September 12, 2022 through September 15, 2022**

60. For days after the beating, Ms. Dorazio received no medical care at MCCF.

61. Eventually, on or about September 15, 2022, a visiting nurse from St. Luke's Hospital responded to Ms. Dorazio's screams for help while the nurse was on the block providing medical care.

62. The visiting nurse arranged for medical care for Ms. Dorazio within MCCF.

63. Ms. Dorazio was also moved to a "level one" solitary confinement cell at that time and provided with clothing.

64. As a result of the findings from the MCCF medical screening, Ms. Dorazio was taken to the Emergency Department at St. Luke's Hospital around noon on September 15, 2022.

## The Objective Medical Findings

65. Upon her arrival at St. Luke's Hospital, three days after she was beaten by Defendants, Ms. Dorazio reported that, on September 12, 2022, she was punched in the face, hit with pepper balls, punched in the chest, and had her clothes ripped off.

66. A suicide risk screening was conducted which found that Ms. Dorazio was not having thoughts of harming herself.

67. Ms. Dorazio's initial complaints to the medical providers at St. Luke's were pain in the left upper chest and underneath the shoulder, and a lump on her upper left breast implant.

68. Her primary complaint was sharp pain in her chest that radiated toward the left shoulder and left upper chest.

69. Ms. Dorazio's chest pain was moderate at rest, but severe when taking a deep breath or pressing on the affected area.

70. A physical exam revealed bruising on Ms. Dorazio's right jaw, as well as tenderness upon palpitation of the chest, left humerus, and right thigh.

71. At that time, Ms. Dorazio's thigh was bruised and she had sustained burn wounds from the pepper balls.

72. A CT of Ms. Dorazio's chest showed an acute, non-displaced fracture of her left 2nd rib.

73. Ms. Dorazio was diagnosed with a closed fracture of a rib on her left side, a proximal humeral fracture, a closed head injury, and right thigh pain.

74. Ms. Dorazio was discharged in a sling and committed back to MCCF.

75. Throughout her incarceration at MCCF, Ms. Dorazio submitted multiple medical request forms related to her shoulder/neck pain and broken rib.

76. The day after her discharge from St. Luke's Hospital, September 16, 2022, Ms. Dorazio turned in an Inmate Request Form asking for a form to appeal her classification as a level 1 suicide risk and to speak to a counselor.

77. Ms. Dorazio also asked that pictures be taken to document the injuries she sustained during the beating.

78. On September 17, 2022, Ms. Dorazio submitted an Inmate Request Form seeking to speak with the Deputy Warden regarding her beating on September 12 and classification as a level 1 suicide risk.

79. Hearing no response, Ms. Dorazio submitted a similar Inmate Request Form on September 18, 2022.

80. Again, on September 25, 2022, Ms. Dorazio made a request for an appeal form.

81. No appeal form was ever provided and Ms. Dorazio believes at some point she was moved off level 1 suicide watch, though she was never informed about an updated classification.

82. On September 26, 2022, Ms. Dorazio was moved to general population, but still in solitary confinement, as she continued MCCF's internal punishment for the alleged misconduct of causing a minor disturbance.

83. On or about September 29, 2022, a hearing on Ms. Dorazio's Motion for Reinstatement of Bail was held.

84. At the bail hearing, Ms. Dorazio's counsel used her phone records to show that she had contacted the probation department on August 23, 2022, and spoke to someone for an extended period of time.

85. Accordingly, Ms. Dorazio's bail was reinstated that day and she was later released from MCCF and solitary confinement.

## Damages

86. As a result of the unlawful and unconstitutional actions of Defendants, Ms. Dorazio sustained the following injuries:

   a. Closed rib fracture;

   b. Proximal humeral fracture;

   c. Closed head injury;

   d. Right thigh pain;

  e. Facial bruising;

  f. Chest pain;

  g. Shoulder pain;

  h. Physical pain; and,

  i. Emotional/psychological distress.

87. As a result of the unlawful and unconstitutional actions of Defendants, Ms. Dorazio was required to seek medical care for which bills were incurred. A claim for medical bills is being made.

88. As a result of the unlawful and unconstitutional actions of Defendants, Ms. Dorazio continues to require medical care and treatment and it is believed and averred that she will continue to require treatment into the future causing her to incur bills. A claim for future medical bills is being made.

89. As a result of the unlawful and unconstitutional actions of Defendants, Ms. Dorazio has sustained and continues to sustain a loss of everyday pleasures and the enjoyments of life.

## COUNT ONE
### First Amendment Retaliation
### Ms. Dorazio v. Defendant McGraw
### (42 U.S.C. § 1983)

90. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

91. Defendant McGraw retaliated against Ms. Dorazio because Ms. Dorazio

exercised her rights to engage in speech under the First Amendment to the United States Constitution as incorporated by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

92. As a result of Defendant McGraw's unlawful and unconstitutional actions, Ms. Dorazio sustained substantial injuries and damages.

### COUNT TWO
### Intentional, Unreasonable and Excessive Force
### Ms. Dorazio v. Defendants McGraw, Carolina, Samuel, Pavolick, and Schiller
### (42 U.S.C. § 1983)

93. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

94. Defendants' use of force set forth above constituted intentional punishment in violation of the Eighth Amendment to the United States Constitution as incorporated by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

95. Defendants' actions were objectively unreasonable in light of the facts and circumstances confronting them.

96. Defendants knew that Ms. Dorazio did not pose a threat to them or any other individuals within MCCF, including herself.

97. Defendants' conduct was a deprivation, under color of state law, of rights guaranteed to Ms. Dorazio under the Eighth and Fourteenth Amendments to the United States Constitution.

98. As a result of Defendants' violations of Ms. Dorazio's constitutional rights, Ms. Dorazio suffered substantial injuries and damages.

### COUNT THREE
### Invasion of Right to Bodily Integrity
### Ms. Dorazio v. Defendants Carolina, Samuel, Pavolick, Schiller, and McGraw
### (42 U.S.C. § 1983)

99. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

100. Defendants violated Ms. Dorazio's constitutionally protected privacy interest in her naked body by wheeling her naked past multiple individuals, both men and women, in the Intake Area and sharing the video footage of her naked body for no legitimate purpose.

101. No government interest was served by the exposure of Ms. Dorazio's naked body in the Intake Area and the sharing of the security footage showing Ms. Dorazio's naked body.

102. The exposure in the Intake Area and the sharing of the video footage constituted unjustified invasions of Ms. Dorazio's privacy interests under the Fourteenth Amendment to the United States Constitution.

103. The conduct of Defendants was a deprivation, under color of state law, of rights guaranteed to Ms. Dorazio under the Fourteenth Amendment to the United States Constitution.

104. As a result of Defendants' violations of Ms. Dorazio's constitutional

rights, Ms. Dorazio suffered substantial injuries and damages.

## COUNT FOUR
### Ms. Dorazio v. Defendants McGraw, Carolina, Samuel, Pavolick, and Schiller (Battery)

105. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

106. Defendants committed the acts described above with the intent to cause a harmful or offensive contact with Ms. Dorazio's body and/or with the intent to put Ms. Dorazio in reasonable and immediate apprehension of a harmful or offensive contact with her body.

107. The actions of Defendants directly resulted in harmful and/or offensive contact with Ms. Dorazio's body.

108. As a result of the actions of Defendants, Ms. Dorazio suffered substantial injuries and damages.

## COUNT FIVE
### Ms. Dorazio v. Defendants McGraw, Carolina, Samuel, Pavolick, and Schiller (Assault)

109. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

110. Defendants intended to put Ms. Dorazio in reasonable and immediate apprehension of a harmful or offensive contact with her body.

111. As a result of the actions of Defendants, Ms. Dorazio was put in

reasonable and immediate apprehension of such contact.

112.   As a result of the actions of Defendants, Ms. Dorazio suffered substantial injuries and damages.

WHEREFORE, Ms. Dorazio demands judgment as follows:

A. As to each count, an amount to be determined at trial, including punitive damages, plus interest;

B. For Plaintiff's attorneys' fees, pursuant to 42 U.S.C. § 1988;

C. For the costs and disbursements incurred in this action; and

D. For such other and further relief as the Court deems just and proper.

DYLLER & SOLOMON, LLC

/s/ Barry H. Dyller
/s/ Caelie M. Sweigart
Attorneys for Plaintiff
88 North Franklin Street
Wilkes-Barre, PA  18701
(570) 829-4860

## JURY DEMAND

Plaintiff demands a trial by jury.